UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-4 (DWF)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **PLEA AGREEMENT AND SENTENCING STIPULATIONS** |
| v. | |
| CHARLES EMEKA OBIJE, | |
| Defendant. | |

The United States of America and defendant CHARLES EMEKA OBIJE (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter the "United States" or the "Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count One of the Information, which charges the defendant with conspiracy to commit international money laundering, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(2)(B)(i). The defendant fully understands the nature and elements of the crimes with which he has been charged.

2. **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count One of the Information. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

1

Beginning no later than in and around 2016, and continuing until in and around 2018, in the State and District of Minnesota and elsewhere, the defendant Charles Emeka Obije did knowingly conspire with Ijeoma Chanthavong and others to transport, transmit, and transfer funds from a place in the United States to or through a place outside the United States knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity—namely, wire fraud—and knowing that the transportation, transmission, and transfer was designed in whole or in part to conceal the nature, location, source, ownership, and control of the proceeds of the unlawful activity, in violation of Title 18, United States Code, Sections 1956(h) and 1956(a)(1)(B)(i).

More specifically, Obije participated in a conspiracy to launder the proceeds of a wire fraud scheme that defrauded victims in the United States to bank accounts owned by co-conspirators located in Nigeria. Several of Obije's relatives were involved in a variety of fraudulent schemes in the United States, including business email compromise schemes, romance scams, and advance fee schemes.

The conspirators used fictitious identities to contact victims throughout the United States via email, social media, and online dating applications. The conspirators then pursued fraudulent romantic relationships online with their victims with the intent of using the relationships to defraud their victims. The conspirators persuaded their victims to send funds for a variety of purposes, including to pay for purported legal fees and other costs related to travel, business, and claims

of inheritance of other legal entitlements. But these were all lies designed to defraud and steal money from their victims.

The conspirators also defrauded businesses located through the United States using the internet and email, including through false and fraudulent "phishing" emails designed to mislead victim companies into revealing bank account information, personal identifying information, and other sensitive information. The conspirators used this information to access victim company bank accounts and make payments to accounts controlled by the conspirators.

In other instances, the conspirators fraudulently posed as vendors seeking payments for services purported rendered and convinced victim companies to unwittingly direct payment to the conspirators, rather than to the actual vendors.

Members of the conspiracy directed the victims to transfer funds to bank accounts controlled by Obije, Chanthavong, and others. To conceal the true nature of the transactions, Obije and others withdrew funds from the accounts and re-deposited them into other accounts in order to disguise the nature, source, ownership, and control of the proceeds of the fraud schemes. While Obije did not inquire into the source of the funds, he knew or should have known that the funds were the proceeds of fraud.

In an effort to conceal the true source and destination of the proceeds, Obije and other conspirators allowed proceeds of the scheme to be deposited into U.S. bank accounts in their names. Using these accounts, Obije and others withdrew cash and made subsequent transfers to co-conspirators, including co-conspirators located in

Nigeria, in order to disguise the nature, source, ownership, and control of the fraud proceeds.

In all, Obije helped launder approximately $356,671 in proceeds of the various fraud schemes through accounts in their name or under their control.

3. **Waiver of Indictment.** The defendant waives the right to be charged by Indictment. The defendant agrees to sign a written waiver of this right at the change of plea hearing.

4. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case.

5. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public

and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

6. **Additional Consequences.** The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

7. **Statutory Penalties.** The defendant understands that Count One of the Information—conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(2)(B)(i)—is a felony offense that carries the following statutory penalties:

   a. a maximum of 20 years in prison;

   b. a supervised release term of not more than 3 years;

   c. a maximum fine of $500,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

   d. restitution as agreed to by the parties in this agreement; and

   e. a mandatory special assessment of $100.

8. **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the

appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

**The Specified Unlawful Activity: Wire Fraud**

    a. <u>Base Offense Level.</u> The parties agree that the base offense level for the specified unlawful activity is 6. USSG §§ 2X1.1(a); 2B1.1(a)(2).

    b. <u>Specific Offense Characteristics.</u> The parties agree that the following upward adjustments apply:

        i. 12 levels because the loss was more than $250,000 and less than $550,000. USSG § 2B1.1(b)(1)(G).
        ii. The parties agree that no other specific offense characteristics apply.

*Count 1: Money Laundering Conspiracy*

    c. <u>Base Offense Level.</u> The parties agree that the base offense level conspiracy to commit money laundering as alleged in Count 1 is 18, which is the offense level for the underlying specified unlawful activity. USSG §§ 2X1.1(a); 2S1.1(a)(1)..

    d. <u>Specific Offense Characteristics.</u> The parties agree that the following upward adjustment applies:
        i. 2 levels because the defendant was convicted under 18 U.S.C. § 1956.
        ii. The parties agree that no other specific offense characteristics apply.

    e. <u>Acceptance of Responsibility.</u> The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation

      Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

  f. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

  g. <u>Guidelines Range</u>. If the adjusted offense level is 17, and the criminal history category is I, the Sentencing Guidelines range is 24 to 30 months of imprisonment.

  h. <u>Fine Range</u>. If the adjusted offense level is 17, the Sentencing Guidelines fine range is $10,000 to $100,000. U.S.S.G. § 5E1.2(c)(3).

9. **Revocation of Supervised Release**. The defendant understands that if he were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

10. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

11. **Agreements as to Sentencing Recommendation.** The government agrees not to recommend a sentence above the high-end of the Guidelines range (30 months in prison). The defendant is free to recommend whatever sentence he deems appropriate. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

12. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

13. **Restitution Agreement.** Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The

defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Information. Defendant agrees that he owes restitution in the amount of $356,671.

14. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement, agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets, and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

15. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the money laundering conspiracy charged in Count One of the Information. The Defendant also agrees to forfeit to the United States, pursuant to 18 U.S.C.

§ 982(a)(8), any real or personal property used or intended to be used to commit, facilitate, or promote the commission of the money laundering conspiracy charged in Count One of the Information, and any property constituting, derived from, or traceable to the gross proceeds the defendant obtained directly or indirectly as a result of that offense.

16. **Immigration Consequences**. The defendant understands that pleading guilty may have consequences with respect to his immigration status, including removal or deportation. The defendant understands that no one, including his attorney, the Assistant United States Attorney or the District Court, can predict to a certainty the effect of his conviction on his immigration status. Regardless of any immigration consequences that may follow from his guilty plea, even automatic removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

17. **Venue Waiver**. Recognizing that the criminal conduct in this case occurred in the State and District of Minnesota, as well as in various other states and districts in the United States, the defendant waives all rights to challenge venue in the State and District of Minnesota.

18. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this

waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above 30 months of imprisonment, and an appeal by the government of the substantive reasonableness of a term of imprisonment below 24 months of imprisonment. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

19. The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

20. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

21. **Complete Agreement.** The defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

ANDREW M. LUGER
United States Attorney

Date: March 7, 2023

BY: JOSEPH H. THOMPSON
Assistant United States Attorney

Date: Charles 03/7/23

CHARLES EMEKA OBIJE
Defendant

Date: March 7, 2023

~~JOHN S. HUGHES~~
STEVEN J. WRIGHT
Counsel for Defendant

12