UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-4 (DWF)

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | **GOVERNMENT'S POSITION** |
| v.  ) | **REGARDING SENTENCING** |
| ) | |
| CHARLES EMEKA OBIJE,  ) | |
| ) | |
| Defendant.  ) | |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Joseph H. Thompson and Melinda A. Williams, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court sentence the defendant to 24 months in prison.

## I.   BACKGROUND

Charles Emeka Obije participated in a conspiracy to launder the proceeds of a fraud scheme that defrauded victims in the United States to bank accounts owned by co-conspirators located in Nigeria. Several of Obije's relatives were involved in a variety of fraudulent schemes in the United States, including business email compromise schemes, romance scams, and advance fee schemes.

The conspirators used fictitious identities to contact victims throughout the United States via email, social media, and online dating applications. The conspirators then pursued fraudulent romantic relationships online with their victims with the intent of using the relationships to defraud their victims. The

conspirators persuaded their victims to send funds for a variety of purposes, including to pay for purported legal fees and other costs related to travel, business, and claims of inheritance of other legal entitlements. But these were all lies designed to defraud and steal money from their victims.

The conspirators also defrauded businesses located through the United States using the internet and email, including through false and fraudulent "phishing" emails designed to mislead victim companies into revealing bank account information, personal identifying information, and other sensitive information. The conspirators used this information to access victim company bank accounts and make payments to accounts controlled by the conspirators.

In other instances, the conspirators fraudulently posed as vendors seeking payments for services purported rendered and convinced victim companies to unwittingly direct payment to the conspirators, rather than to the actual vendors.

Members of the conspiracy directed the victims to transfer funds to bank accounts controlled by Obije and others. To conceal the true nature of the transactions, Obije and others withdrew funds from the accounts and re-deposited them into other accounts in order to disguise the nature, source, ownership, and control of the proceeds of the fraud schemes. While Obije did not inquire into the source of the funds, he knew or should have known that the funds were the proceeds of fraud.

In an effort to conceal the true source and destination of the proceeds, Obije and other conspirators allowed proceeds of the scheme to be deposited into U.S. bank

accounts in their names. Using these accounts, Obije and others withdrew cash and made subsequent transfers to co-conspirators, including co-conspirators located in Nigeria, in order to disguise the nature, source, ownership, and control of the fraud proceeds.

For example, victim Adela K. is a senior citizen residing in California. Adela K. met a man on an online dating website. The man (the "Lt. Colonel") claimed to be a Lieutenant Colonel in the United States Army. In reality, the man was an imposter who was using the identify of a real Lieutenant Colonel to carry out an online romance fraud scheme. After developing an online relationship, the "Lt. Colonel" told Adela K. that he was eligible to receive a retirement benefit from the United States Army, but his retirement check had been sent to Canada by mistake.  The Lt. Col. claimed that he needed to pay some money up front in order for the retirement check to clear customs in Canada. Initially, the "Lt. Colonel" asked Adela K. for $100 in order to acquire the retirement check, which she provided. The "Lt. Colonel" continued to ask for more money in order for the retirement check to clear customs. The "Lt. Colonel" also introduced Adela K. to another man who claimed to work at a bank and who provided wiring instructions to Adela K. so she could make payments in order for the retirement check to clear customs. Based on these instructions, Adela K. wired $25,775 to one of Obije's personal accounts on February 26, 2018. The following day, Obije wired $23,590 to an account held by a relative in Lagos, Nigeria.

Adela K. later took out a mortgage of more than $200,000 and used the funds to make payments for the "release" of the "Lt. Colonel's" retirement check.

In all, Obije helped launder approximately $356,671 in proceeds of the various fraud schemes through accounts in their name or under their control.

## II.   THE PRESENTENCE INVESTIGATION REPORT

The Presentence Investigation Report correctly calculated the Guidelines range as being 24 to 30 months in prison.

As explained in the PSR, Obije was involved in laundering the proceeds of various online fraud schemes carried out by individuals in Nigeria. Obije facilitated the transfer of money from U.S. victims to bank accounts held by co-conspirators in west Africa. Obije helped conceal the source and ownership of the fraud proceeds by allowing them money to be laundered through bank accounts he set up and controlled in the United States.

While Obije was not involved in the underlying fraud scheme, he played a key role in allowing those who were to profit from their fraud schemes while remaining beyond the reach of American law enforcement. Absent Obije's involvement, those involved in the fraud scheme would not have been able to enjoy the proceeds of their fraudulent schemes without coming to the United States and risking apprehension by U.S. law enforcement. That he stuck his head in the sand to avoid learning the source of the fraudulent proceeds is not a significant mitigating factor.

Nothing in Obije's background explains or excuses his crime. He was born in Lagos, Nigeria, in 1982. He first came to the United States in 2002 to attend college. He because a naturalized U.S. citizen in 2012. He received a master's degree in social work from the University of Minnesota-Duluth in 2015.  Despite his education and

advantages he enjoyed, Obije decided to serve as a money launderer that allowed his family in Nigeria to defraud elderly Americans.

By imposing a sentence of 24 months, the Court will emphasize that financial crimes will be punished severely, even where the participants are middle class professionals and not street criminals. *United States v. Stefonek*, 170 F.3d 1030, 1038 (7th Cir. 1999) ("Business criminals are not to be treated more leniently than members of the 'criminal class' just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity."); *United States v. Stall*, 581 F.3d 276, 286 (6th Cir. 2009) ("We do not believe criminals with privileged backgrounds are more entitled to leniency than those who have nothing left to lose."). As the Seventh Circuit has explained:

> It is natural for judges, drawn as they (as we) are from the middle or upper-middle class, to sympathize with criminals drawn from the same class. But in this instance we must fight out nature. Criminals who have education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.

*Stefonek*, 170 F.3d at 1038.

Obije helped launder the funds of an awful internet fraud schemes. His crime was serious and merits a serious sentence. Simply put, money laundering provides the oxygen that allows these internet scams to flourish. These schemes could not be carried out without the help of people like Obije who are willing to conceal and launder the funds to conspirators operating abroad. In light of the nature of the crime, and Obije's role in it, a sentence of 24 months is appropriate.

**III.**   **CONCLUSION**

For the reasons set forth above, the government respectfully requests that the

Court impose a sentence of 24 months in prison.

 

                                     Respectfully Submitted,

Dated:  September 1, 2023               ANDREW M. LUGER
                                    United States Attorney

                                 */s/ Melinda A. Williams*_____

BY:  MELINDA A. WILLIAMS
       JOSEPH H. THOMPSON
       Assistant U.S. Attorneys