UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CR. NO. 23-4 (DWF)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**DEFENDANT'S POSITION ON SENTENCING**

CHARLES EMEKA OBIJE,

    Defendant.

Defendant Charles Obije has taken full responsibility for his actions by waiving indictment and pleading guilty to an information charging him with conspiracy to commit international money laundering. Mr. Obije now respectfully asks the Court to impose a sentence of probation, with such conditions as the Court deems appropriate and just.

Mr. Obije has no remaining objections to the PSR. His total offense level is 17 and, with a criminal history category of I, his advisory sentencing range is 24–30 months in prison. Because his offense is a Class C felony, he is eligible for a probationary sentence of between one and five years. 18 U.S.C. § 3561(c)(1).

"[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term," the Court must consider the 18 U.S.C. § 3553(a) factors. *See* 18 U.S.C. § 3582(a). And

§ 3553(a), as its primary goal, directs the Court "to impose a sentence sufficient, but not greater than necessary, to comply with the basic aims of sentencing." *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007) (summarizing 18 U.S.C. § 3553(a)). In considering an appropriate sentence, the Court must "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

The sentencing statute first directs the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1). This is consistent with the basic notion that the sentencing judge is "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

Here, the offense is significant and serious. Numerous victims were defrauded out of huge amounts of money, and Mr. Obije assisted in transferring that money overseas. The amount defrauded added up to over half a million dollars, taken from victims through various schemes. Mr. Obije has spoken to the horror he felt in learning the scope of this fraud and the harm inflicted on its victims, and he has taken full responsibility for transferring $356,671 derived

from those fraud schemes. He stipulated that he would pay restitution in that amount. Although he was not directly involved in those schemes, he fully recognizes that he should have done more to investigate the source of the money he was transferring. He has tremendous remorse for his role in harming the victims of these frauds.

While acknowledging the harm he has helped perpetrate and making no excuse for his part in it, Mr. Obije asks the Court to also consider that he has a long, demonstrated history of service to his community in Duluth. Numerous people who know him and his work well have written letters on his behalf, testifying to the tremendous asset he has been. In the words of Brian Thorbjornsen, who has known Mr. Obije in the Duluth social-work community for over a decade, attests to how Mr. Obije "has worked tirelessly in the Duluth area to find long term solutions to social problems."

Multiple letters talk about Mr. Obije's unique ability to bridge cultural gaps and bring people together to work together on the pressing needs of the community. He does not wait for others to act, and he does not want to sit around on the sidelines of life simply observing the pain and need in his community. Again and again, he is the primary mover on social projects, demonstrating a sincere and heartfelt desire to improve people's lives.

And this is not a new passion. Fifteen years ago, he was working at Woodland Hills juvenile treatment facility near Duluth when he started a program to help the young people there express themselves through music. He showed them the recording process and helped them develop and pursue their own projects, for no other reason than that he was in a position to help them and wanted to do it.

As documented in the letter from Rev. Douglas Paulson, the Executive Director of Twin Ports Ministry to Seafarers, Mr. Obije has been involved in programs that provide transitional housing to individuals and families facing homelessness, that assist with food access and distribution in recognized food deserts, and that work with federal and state agencies to promote civic engagement and provide technology access and services to underserved communities.

Mr. Obije's standing in the community has been damaged by his participation in this crime, which has been reported in the Duluth news. He used to teach social work classes as adjunct faculty at the College of St. Scholastica, but he has lost that opportunity because of this offense. The people who have been working with him in the Duluth community know him to be more than this crime, he also accepts that he may have to prove himself again. If so, he is as dedicated as ever

to working for the people of his community. Even while knowing he was being investigated for this offense as early as 2019, Mr. Obije never stopped his work on behalf of the community, and he does not intend to stop now.

Mr. Obije is also a dedicated and loving father to his two teenaged children. While he shares custody of them with his ex-wife, he loves them dearly and is heavily involved in their lives. They need him, and a probationary sentence would allow them to keep their father in their lives in a crucial time in their adolescence.

The sentencing statute asks the Court to consider deterrence, *see* § 3553(a)(2)(B), but multiple studies over many years show that imprisonment does not have a deterrent effect. The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See* Andrew von Hirsch et al., *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28- 29 (2006) ("[I]ncreases

in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (variations in sentence length "have no detectable effect on rates of re-arrest").

There is no discernible documented difference in deterrence between probation and imprisonment for white-collar offenses. *See* Stephen Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995). For all offenses, most available evidence suggests that imprisonment, if anything, has either no effect on deterrence compared to a non-custodial sentence, or else leads to a small difference in recidivism related to the presence or absence of effective programming while incarcerated. *See* Charles E. Loeffler and Daniel S. Nagin, *The Impact of Incarceration on Recidivism*, 5 Annual Rev. of Criminology 133, 147–49 (2022) (reviewing numerous studies). If programming isn't available, imprisonment leads to increased recidivism. *See id*. at 147.

The sentencing statute also requires a sentence to consider how best to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a)(7). Mr. Obije has agreed to pay $356,671 in restitution, an enormous obligation. He wants to make progress on that obligation, and he can only do so while he is working. A probationary sentence would allow him to begin making restitution payments.

A probationary sentence is a "substantial restriction of freedom." *Gall v. United States*, 552 U.S. 38, 47 (2007). For up to five years, Mr. Obije will live under constant supervision. He will have to report to a probation officer, and he will need permission to leave the District of Minnesota, to move, or to change jobs. He can be ordered, as part of his probation, to serve time on electronic monitoring, or to remain in the custody of the BOP during nights, weekends, or other intervals of time during the first year of his probation. He may be required to submit to chemical testing, or to submit to such other conditions and restrictions that the Court deems are appropriate. Until and unless he successfully completes his probation, he will live knowing that any misstep could land him in prison. It is a significant ongoing check on his freedom that will ensure that Mr. Obije successfully reintegrates into society.

## CONCLUSION

A sentence of probation is sufficient, but not greater than necessary, to punish Mr. Obije for his crime. Mr. Obije has a remarkable history of community service, and he has demonstrated his ability to obey all conditions imposed on him by the Court and by pretrial services. He has tremendous remorse for his actions, and he has agreed to significant restitution. He will best be able to begin paying off that amount if he is allowed to stay in the community and continue working. Probation will also allow Mr. Obije's teenaged children to keep their father in their life. With appropriate conditions set by the Court, a probationary sentence will best punish Mr. Obije for his actions while he repays his offense and continues to serve his Duluth community.

Respectfully submitted,

Dated: September 1, 2023

/s/ John S. Hughes
Minnesota Attorney #185966
331 Second Avenue South, Suite 705
Minneapolis, MN 55401
(612) 664-0520

/s/ Steven J. Wright
Minnesota Attorney #387336
331 Second Avenue South, Suite 705
Minneapolis, MN  55401
(612) 669-8280

Attorneys for Mr. Obije